UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MONICA PRESTIA, | ) | |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| | ) | |
| | ) | Civ. Case No. |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| BLOOMBERG L.P., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Monica Prestia ("plaintiff"), by her attorneys, The Roth Law Firm,

PLLC, states for her complaint against defendant as follows:

## PARTIES

1.      Plaintiff was an employee of defendant, Bloomberg L.P. ("Bloomberg"),

serving in the position of Account Executive.  She resides at 3067 Lonni Lane, Merrick,

New York.  Plaintiff is a married woman with one child.

2.      Plaintiff took maternity leave from Bloomberg starting in September of

2005.  In the 12 months prior to that, plaintiff worked at least 1,250 hours at Bloomberg.

3.      Defendant, Bloomberg, is, upon information and belief, a corporation

organized and existing under the laws of the State of Delaware with its principal place of

business located at 731 Lexington Avenue, New York, New York 10022.  Since January

1, 2004, Bloomberg has employed at least 50 persons in Manhattan.  Bloomberg is a

corporate defendant as that term is used in the New York State Human Rights Law, the

New York Administrative Code, the Federal and Family Medical Leave Act, and Title

VII of the Federal Civil Rights Act of 1964, as amended.

## JURISDICTION

4.      This Court has federal question and supplemental jurisdiction pursuant to

28 U.S.C. §§ 1331 and 1367. This Court has subject matter jurisdiction pursuant to Title

VII to redress and enjoin employment practices of Bloomberg.

## VENUE

5.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), in that

a substantial part of the events giving rise to plaintiff's claims occurred in New York, and

Bloomberg resides in New York. Venue is also proper under 42 U.S.C. § 2000e-5(f)(3)

in that (i) the unlawful employment practices giving rise to plaintiff's claims were

committed in New York, (ii) the employment records relevant to such practices are, on

information and belief, maintained and administered in New York, and (iii) the plaintiff

would have worked in New York but for the unlawful employment practices alleged.

## BACKGROUND

6.      Plaintiff's devotion to her career in advertising dates back to 1989. She

has flourished at several high profile companies, including the New York Post and

WXRK 92.3 K-Rock.

7.      In December 1997, plaintiff began working as an Account Executive for

Bloomberg.

8.      From the outset, plaintiff performed her job in a highly competent and

professional manner. She became the first employee ever to sell a Bloomberg Radio

advertising package for $1 million. Less than 2 years after she started, plaintiff was

2

promoted to become the Bloomberg Television Latin American Sales Manager, a position which required plaintiff to represent Bloomberg in Miami, Europe, and South America. In 2002, Plaintiff received the Shooting Star Award at Bloomberg's Annual Sales Awards Event. Soon after, plaintiff was offered a second promotion to Bloomberg's Wealth Manager Magazine. In 2004, plaintiff was honored, yet again, with Bloomberg's Versatility Award. Further, up until in or about August 2005, plaintiff's superiors, including, but not limited to, David Wachtel, Frank Vulpi, Bill Dimodugno, and Mariann Deluca, gave her praise, good reviews, annual raises between 5 and 10 percent of her salary, and certificates, which plaintiff understood was an additional form of compensation.

9.      In or about February 2005, plaintiff, at age 38, became pregnant with her first child.

10.     In or about February 2005, plaintiff's immediate supervisor, Frank Vulpi ("Vulpi") began reporting to Carole Kaschak ("Kaschak"). Upon information and belief, Kaschak is unable to become pregnant.

11.     Plaintiff enjoyed a problem free pregnancy for the first 2 trimesters, and her superlative work at Bloomberg continued.

12.     In or about August 2005, plaintiff began to experience health complications related to her pregnancy. Plaintiff's physician urged plaintiff to reduce her hours at work and forwarded a medical request to Bloomberg to that effect. As a result, Bloomberg's Human Resources department allowed plaintiff to change her daily schedule from 8 a.m. – 6 p.m. to 9 a.m. – 5 p.m.

## PREGNANCY DISCRIMINATION

13.    In or about August 2005, plaintiff's pregnancy was physically apparent. At that time, Kaschak began exhibiting extreme hostility toward plaintiff. Vulpi told plaintiff that Kaschak repeatedly ordered him to call plaintiff and question her about arriving to work at 9 a.m., even though plaintiff's revised schedule had been approved. Kaschak, herself, appeared to avoid plaintiff unless Kaschak wanted to criticize her. Whenever Kaschak approached plaintiff around that time period, Kashcak would subject plaintiff to ridicule, scorn, and anger for no apparent reason. One time, Kaschak shouted at plaintiff for being unfamiliar with a new system for documenting the particulars of sales calls, even though Kaschak knew that plaintiff had been trained with the old system, and that the new system was foreign to plaintiff. Nevertheless, Kaschak screamed at her. In contrast to Kaschak's treatment of plaintiff, Kaschak did not exhibit hostility toward similarly situated non-pregnant employees of Bloomberg. Likewise, Kaschak did not exhibit hostility toward plaintiff before her pregnancy was physically apparent.

14.    Kaschak's repeated harsh treatment caused plaintiff severe stress and anxiety. Out of profound concern for the health of herself and her unborn child, plaintiff commenced her maternity leave earlier than she had planned. She began her maternity leave on or about September 1, 2005.

15.    Despite the fact that she was on maternity leave, plaintiff, being a conscientious employee, worked from home, spending large quantities of time daily on the phone with clients and logging onto the Bloomberg computer network to accomplish her tasks.

## HOSTILE WORK ENVIRONMENT

16.     Plaintiff returned to Bloomberg on or about February 21, 2006.
Immediately upon her return, Kaschak's hostility towards plaintiff escalated. Although
plaintiff warmly greeted Kaschak and told her how glad she was to be back at work,
Kaschak, rather awkwardly, refused to respond, look at plaintiff, or even acknowledge
plaintiff's presence. Kaschak exhibited severe outward antagonism toward plaintiff.
During plaintiff's first several weeks back, Kaschak, therefore, had little communication
with plaintiff except Kaschak continued to ridicule plaintiff. In contrast to Kaschak's
treatment of plaintiff, Kaschak did not exhibit hostility toward similarly situated
employees who did not have newborn babies.

17.     On or about March 13, 2006, Kaschak demanded plaintiff meet her in a
conference room to discuss plaintiff's performance "right now!" Kaschak did not
coordinate this meeting with Vulpi. When Kaschak met with similarly situated
employees who did not have newborn babies to discuss employees' performance,
Kaschak coordinated the meetings with the immediate supervisors of employees. In fact,
only about one week prior to plaintiff's meeting, Kaschak met with a male employee,
Orazio Siclari, to discuss performance, and Kaschak invited Vulpi, who was Mr. Siclari's
immediate supervisor, to attend. Vulpi told plaintiff, however, that Kaschak specifically
forbid him from attending plaintiff's meeting because Kaschak did not want Vulpi to
defend plaintiff. At plaintiff's own meeting, Kaschak subjected her to an exhaustive
inquisition. Going one client at a time, Kaschak scrutinized every decision plaintiff made
and every action plaintiff took since returning from maternity leave. Further, Kaschak
chastised plaintiff for not finishing enough work before she went on maternity leave and

made her feel guilty about taking maternity leave. The meeting concluded with the understanding that plaintiff would provide additional information about several sales calls that had taken place. Plaintiff was shaking when she exited the conference room.

18. The next morning, on or about March 14, 2006, Kaschak ordered plaintiff through an instant message to meet her at the Bloomberg Human Resources department at 11 a.m. There, Kaschak and plaintiff met with Pria Varindani. At that time, Kaschak complained that plaintiff did not provide enough information about several sales calls, even though she had given the assignment to plaintiff only the previous afternoon, and plaintiff was close to completing the assignment. In response, plaintiff told Ms. Varindani details about how Kaschak had been singling her out and abusing her because of her pregnancy and newborn baby. Ms. Varindani pledged to investigate Kaschak's behavior. However, plaintiff never heard anything more about the promised investigation.

19. Thereafter, on or about March 16, 2007, plaintiff had an attorney send correspondence to Bloomberg, requesting that plaintiff no longer report to Kaschak and requesting that Kaschak receive antidiscrimination training.

## RETALIATION

20. On or about March 29, 2006, plaintiff had her annual evaluation with Kaschak and Vulpi. Needless to say, it was the worst of plaintiff's career. The evaluation did not account for the portion of the year that plaintiff worked prior to taking maternity leave. At the end of the evaluation, Kascak and Vulpi did not give plaintiff her salary and financials for the upcoming year. When an evaluation took place of similarly situated employees who did not have newborn babies, the employees were evaluated for

6

the entire past year and received their salaries and financials for the upcoming year. Likewise, during plaintiff's annual evaluations before she had her baby, she was evaluated for the entire past year and received her salary and financials for the upcoming year.

21.    For over a month, plaintiff remained unaware of her salary and financials for the upcoming year. On or about May 2, 2006, at a meeting with Kaschak and Vulpi, plaintiff was informed that her salary would not increase in the upcoming year as it had in prior years, and that, although it was unprecedented, her certificates, which plaintiff understood was an additional form of compensation, would decrease from 15 to 10.

22.    After the meeting on or about May 2, 2006, treatment of plaintiff worsened. It was customary for Kaschak to ring a bell and send a mass email around the office whenever an employee sold an advertising package. Kaschak, however, did not ring the bell or send an email when plaintiff sold an advertising package. Kaschak's inactions made plaintiff appear unproductive, while similarly situated employees without newborn babies were rewarded and appeared productive. Kaschak even ordered that plaintiff's workspace be physically moved to an area of the office that was isolated. In the new area, plaintiff faced away from the other employees, ostracizing her from her colleagues. Furthermore, Kaschak excluded plaintiff from meeting new employees and participating in office activities, while similarly situated employees who did not have newborn babies were introduced to new employees and included in office activities.

23.    Upon information and belief, Kaschak spread rumors about plaintiff to another supervisor, Trevor Fellows, with whom Kaschak had a friendly relationship. As a result, on one occasion, Mr. Fellows asked plaintiff, "What is this, your third baby?"

Because of negative statements made by Kaschak, plaintiff was forced to fight the stereotyped perception that she wished to simply have her baby and be a full-time mother.

24.    Because of the ongoing mistreatment that plaintiff endured at Bloomberg, plaintiff sought psychiatric help on or about May 8, 2006. Plaintiff's doctor diagnosed her with major depression. As a result of this major depression, plaintiff had to take disability leave on or about June 15, 2006.

25.    Bloomberg terminated plaintiff on December 31, 2006, according to correspondence from Bloomberg's health care plan, a copy of which is attached hereto as Exhibit "A."

26.    Upon information and belief, on or about the day that plaintiff was terminated, Kaschak was demoted from her position.

## PROCEDURAL HISTORY

27.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within 90 days of the receipt of a Notice of Right to Sue, issued by the EEOC on April 24, 2007, a copy of which is attached hereto as Exhibit "B."

## FIRST CLAIM FOR RELIEF

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e-5(f), *et seq.*, AS AMENDED

### GENDER DISCRIMINATION

28.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 27 above as if fully set forth herein.

29.     Bloomberg has discriminated against plaintiff by treating her differently from and less preferably than similarly situated male employees and by subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation, discriminatory subjection to discipline procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

30.     Bloomberg's policies, practices, and procedures have produced a disparate impact against plaintiff with respect to her terms and conditions of employment.

31.     Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

32.     Despite reasonable efforts, plaintiff has been unable to find comparable employment.  As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

33.     As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

34.     By reason of the persistent discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

35.    By reason of the discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under Title VII.

### SECOND CLAIM FOR RELIEF

### VIOLATIONS OF TITLE VII, 42 U.S.C. §2000e(k) *et seq.*

### PREGNANCY DISCRIMINATION

36.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 35 above as if fully set forth herein.

37.    Bloomberg has discriminated against plaintiff because of or on the basis of pregnancy, childbirth, or related medical conditions.

38.    Bloomberg has discriminated against plaintiff by treating her differently from and less preferably than similarly situated employees, who were not so affected, and by subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation, discriminatory subjection to discipline procedures, disparate pay, disparate terms and conditions of employment, harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

39.    Bloomberg's policies, practices, and procedures have produced a disparate impact against plaintiff with respect to her terms and conditions of employment.

40.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

41.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the

loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

42.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

43.    By reason of the persistent discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

44.    By reason of the discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under Title VII.

### THIRD CLAIM FOR RELIEF

### VIOLATIONS OF TITLE VII, 42 U.S.C. §2000e(k)

### RETALIATION

45.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46.    Bloomberg retaliated against plaintiff because she insisted on working in an environment free of gender discrimination and pregnancy discrimination and also because she complained about said discrimination.

47.    Bloomberg retaliated against plaintiff by subjecting her to adverse employment actions, including, but not limited to, subjecting her to a discriminatory denial of a pay raise, a discriminatory performance evaluation, discriminatory subjection to discipline procedures, disparate pay, disparate terms and conditions of employment,

harassment, hostile work environment, and other forms of discrimination in violation of Title VII.

48.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

49.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

50.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

51.    By reason of the retaliation plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under Title VII.

## FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF N.Y. EXEC. LAW §29

### GENDER DISCRIMINATION

52.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 51 above as if fully set forth herein.

53.    Because of her gender, Bloomberg discriminated against plaintiff in compensation and in the terms, conditions or privileges of her employment, in violation of New York Executive Law § 296.

54.    Because of her gender, Bloomberg also denied or withheld from plaintiff her right to be included in the office activities, in violation of New York Executive Law § 296.

55.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

56.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

57.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

58.    By reason of the persistent discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

59.    By reason of the discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under New York Executive Law § 296.

## FIFTH CLAIM FOR RELIEF

## VIOLATIONS OF N.Y. EXEC. LAW §296

### RETALIATION

60.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 above as if fully set forth herein.

61.    In violation of New York Executive Law § 296, Bloomberg discharged, expelled, or otherwise discriminated against plaintiff because she opposed practices forbidden by New York Executive Law §296 or because she he filed a complaint, testified or assisted in a proceeding under New York Executive Law § 296.

62.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

63.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

64.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her

14

good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

65.     By reason of the retaliation plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under New York Executive Law § 296.

## SIXTH CLAIM FOR RELIEF

## VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107
## GENDER DISCRIMINATION

66.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

67.     Because of her gender, Bloomberg discriminated against plaintiff in compensation and in the terms, conditions or privileges of her employment, in violation of New York City Administrative Code § 8-107.

68.     Because of her gender, Bloomberg also denied or withheld from plaintiff her right to be included in the office activities, in violation of New York City Administrative Code § 8-107.

69.     Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

70.     Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the

loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

71.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

72.    By reason of the persistent discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

73.    By reason of the discrimination plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under New York City Administrative Code § 8-107.

## SEVENTH CLAIM FOR RELIEF

## VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107

### RETALIATION

74.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 73 above as if fully set forth herein.

75.    In violation of New York City Administrative Code § 8-107, Bloomberg discharged, expelled, or otherwise discriminated against plaintiff because she opposed practices forbidden by New York City Administrative Code § 8-107 or because she filed a complaint, testified or assisted in a proceeding under New York City Administrative Code § 8-107.

76.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

77.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

78.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

79.    By reason of the retaliation plaintiff suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available under New York City Administrative Code § 8-107.

## EIGHTH CLAIM FOR RELIEF

## VIOLATIONS OF FEDERAL FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2614(a)(1)

80.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 79 above as if fully set forth herein.

81.    In violation of the federal Family and Medical Leave Act, Bloomberg failed, upon plaintiff's return from maternity leave, to provide plaintiff with a position equivalent in terms and conditions to her previous position.

82.    Bloomberg's policies, practices, and procedures regarding maternity leave have resulted in discrimination against plaintiff with respect to her terms and conditions of employment.

83.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

84.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

85.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

86.    By reason of Bloomberg's violation of the federal Family and Medical Leave Act, plaintiff is entitled to all legal and equitable remedies available under the federal Family and Medical Leave Act.

### NINTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

87.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 86 above as if fully set forth herein.

88.    While employed at Bloomberg, plaintiff suffered intentional infliction of emotional distress at the hands of Bloomberg.

89.    Bloomberg's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

90.    Bloomberg's actions can be regarded as atrocious and utterly intolerable in a civilized community.

91.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

92.    Despite reasonable efforts, plaintiff has been unable to find comparable employment.  As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

93.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

94.    By reason of the intentional infliction of emotional distress suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available.

## TENTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 94 above as if fully set forth herein.

96.     Bloomberg's negligence caused plaintiff to suffer emotional distress.

97.     Bloomberg owed a duty to plaintiff.

98.     Bloomberg breached this duty and either unreasonably endangered the physical safety of plaintiff and her baby or caused the plaintiff to fear for her safety and the safety of her baby.

99.     Bloomberg's actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

100.    Bloomberg's actions can be regarded as atrocious and utterly intolerable in a civilized community.

101.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

102.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

103.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her

20

good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

104.    By reason of the negligent infliction of emotional distress suffered at Bloomberg, plaintiff is entitled to all legal and equitable remedies available.

## ELEVENTH CLAIM FOR RELIEF

## NEGLIGENT HIRING, RETENTION, AND SUPERVISION

105.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 104 above as if fully set forth herein.

106.    As a result of direct negligence on the part of Bloomberg, plaintiff experienced emotional distress.

107.    Bloomberg placed its employees, including, but not limited to, Kaschak, in a position to cause foreseeable harm, harm which plaintiff most probably would have been spared had Bloomberg taken reasonable care in making its decision concerning the hiring and retention of employees, including, but not limited to, Kaschak.

108.    Bloomberg knew or should have known of the propensity of its employees, including, but not limited to, Kaschak, for the sort of conduct which caused the injuries of plaintiff.

109.    Bloomberg's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of plaintiff, entitling plaintiff to an award of punitive damages.

110.    Despite reasonable efforts, plaintiff has been unable to find comparable employment. As a direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer substantial economic losses, including the

loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

111.    As a further direct and proximate result of Bloomberg's aforementioned conduct, plaintiff has suffered and continues to suffer impairment and damage to her good name and reputation, severe and lasting embarrassment, emotional pain, inconvenience, anguish, and other incidental and consequential damages and expenses.

112.    By reason of Bloomberg's negligent hiring, retention, and supervision of its employees, plaintiff is entitled to all legal and equitable remedies available.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant judgment to her containing the following relief:

A.    Declaratory judgment that Bloomberg's employment policies, practices, and procedures challenged herein are illegal and in violation of Title VII;

B.    A permanent injunction against Bloomberg and its partners, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, usages, and gender and pregnancy discrimination as set forth herein;

C.    An Order requiring Bloomberg to initiate and implement programs that (i) will provide equal employment opportunities for female employees, pregnant employees, and employees with newborn babies; (ii) will remedy the effects of Bloomberg's past and

present unlawful employment policies, practices, and procedures; and (iii) will eliminate the continuing effects of the discriminatory and retaliatory practices described herein;

D.    An Order requiring Bloomberg to initiate and implement systems of assigning, training, transferring, compensating, and promoting female employees, pregnant employees, and employees with newborn babies in a non-discriminatory manner;

E.    An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (C) through (D) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (C) through (D) above;

F.    An award of plaintiff's actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits and all damages affordable under the causes of action set forth herein;

G.    An award of damages in an amount to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

H.    An award of punitive damages;

I.    An award of reasonable attorneys' fees and the costs of this action, including attorneys' fees for representation before the New York State division of Human Rights as required before commencing proceedings in this federal action;

J.     Prejudgment interest;

K.     Such other and further relief as this Court may deem just and proper; and

L.     Retention of Jurisdiction by this Court until such time as the Court is

satisfied that Bloomberg has remedied the practices, policies, and procedures complained

of herein and is determined to be in full compliance with the law.

Respectfully submitted this 27 day of June, 2007.

Richard A. Roth, Esq. (RAR 5538)
THE ROTH LAW FIRM, PLLC
545 Fifth Avenue, Suite 960
New York, New York 10017
Tel: 212-542-8882
Fax: 212-542-8883
*Attorneys for Plaintiff*

**ADP Benefit Services**
P.O. Box 2968
Alpharetta, GA 30023-2968



# COBRA Services

**COBRA Continuation Coverage Election Notice**
1/31/2007

|||||||||||||||||||||||||||||||||||||          CASELEC
                                               BITS 0060

Monica German and family
3067 LONNI LN.
MERRICK, NY  11566

Dear Monica German and family:

This notice contains important information about your right to continue your health care coverage in the  Bloomberg L.P. Health &
Welfare (the Plan). Please read the information contained in this notice very carefully.

To elect COBRA continuation coverage, follow the instructions on the enclosed Election Form.

Please note: Although ADP Benefit Services has contracted with the employer to provide various COBRA administration services; ADP is
not the Plan Administrator.  The Plan Administrator is the sponsor of the Plan.

If you do not elect to continue your health care coverage by completing the enclosed "Election Form" and returning it to us, your coverage
under the Plan will end on 12/31/2006 due to End of Employment on 12/31/2006.

Each person (qualified beneficiary) below is entitled to elect COBRA continuation coverage under the Plan.

**Monica German**
**John Prestia**
**Stephanie Prestia**

Because of the event (listed above) that will end coverage under the Plan, those individuals indicated above, are entitled to continue health
care coverage for up to 18 months.  If elected, COBRA continuation coverage will begin on 01/01/2007 and can last until 6/30/2008.

Cost of COBRA Continuation of coverage:

|  | Bloomberg Medical Plan (144759) |
|---|---|
| Employee + 1 | $922.38 |
| Employee + Two or More | $1,402.54 |
| Employee Only | $440.12 |

BITS 0060 0105

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Monica Prestia<br>3067 Lonni Lane<br>Merrick, NY 11566 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601 7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 520-2006-02481 | Patrick A. Sanford,<br>Federal Investigator | (212) 336-3677 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Spencer H. Lewis, Jr.*                    APR 24 2007

Enclosures(s)                Spencer H. Lewis, Jr.,        *(Date Mailed)*
                             Director

cc:    Respondent:                              Charging Party's Attorney:

       BLOOMBERG LLP                            The Roth Law Firm, PLLC
       Attn: Director of Human Resources        Attn: Charles Roth
       731 Lexington Avenue                     545 Fifth Avenue
       New York, NY 10022                       New York, NY 10017